# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMINDA O. ALAAN,<br><br>       Plaintiff,<br> vs.<br>ASSET ACCEPTANCE LLC,<br><br>       Defendant. | CASE NO. 10cv328-WQH-BLM<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendant Asset Acceptance LLC ("Asset"). (ECF No. 30).

## I. Background

On December 13, 2010, Plaintiff Arminda O. Alaan filed the Second Amended Complaint, which is the operative pleading in this action. (ECF No. 26). The Second Amended Complaint alleges: "This is an action for actual damages, statutory damages, attorney fees and costs brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter 'FDCPA') and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.* (hereinafter 'RFDCPA') which prohibit debt collectors from engaging in abusive, deceptive and unfair practices." *Id.* ¶ 1. Plaintiff alleges that, in November 1999, Plaintiff incurred a financial

obligation to Citibank, and thereafter Plaintiff was unable to make payments on the debt and defaulted on February 18, 2005. The Second Amended Complaint alleges that Asset violated the FDCPA and the RFDCPA in connection with a lawsuit Asset filed against Plaintiff in state court on February 19, 2009 seeking attorney's fees and $3,991.42 plus pre-judgment interest at a fixed rate of 24% per year from March 8, 2005.

On May 9, 2011, Asset filed the Motion for Summary Judgment accompanied by evidence in support of the motion. (ECF No. 30).

On June 14, 2011, Plaintiff filed an opposition to the Motion for Summary Judgment accompanied by evidence and objections to the evidence submitted by Asset. (ECF No. 32).

On July 1, 2011, Asset filed a reply brief and a response to Plaintiff's evidentiary objections. (ECF No. 33).

On July 27, 2011, Asset filed a Notice of Recently Decided Supplemental Authority in Support of the Motion for Summary Judgment. (ECF No. 34).

On July 28, 2011, Plaintiff filed a response to Asset's Notice of Recently Decided Supplemental Authority. (ECF No. 35).

On July 29, 2011, the Court heard oral argument on the Motion for Summary Judgment. (ECF No. 36).

## II.    Facts

Asset submits a declaration from Ken Proctor, Asset's "Litigation Coordinator." (Proctor Decl. ¶ 1, ECF No. 30-2). Proctor states that, "[o]n May 25, 2007, Asset acquired all rights to a portfolio of charged-off credit card accounts from Citibank," including a credit card account in Plaintiff's name. *Id*. ¶ 2. Proctor states that "[t]he data provided by Citibank reflected that when the account was charged off [on October 20, 2005], the balance due on the account was $3,991.42," and Citibank "provided Asset with copies of the account statements for Alaan's account at the time her last payment was credited to the account ('the March 22, 2005 statement') and at the time of charge-off ('the October 20, 2005 statement')." *Id*. ¶¶ 3-4. The March 22, 2005 statement reflects that the effective annual interest rate on the account was 29.49%, while the October 20, 2005 statement reflects an interest rate of 30.74%. *Id*., Exs. B,

C, ECF No. 30-2 at 11, 13.  Proctor states: "Although it could have applied a higher rate of interest, Asset assessed interest at an annualized rate of 24% from the date of charge-off, pursuant to company policy."  *Id.* ¶ 4.  Proctor states:

> The Collection Complaint filed on behalf of Asset against Ms. Alaan [in state court] on February 19, 2009, contains an apparent typographical error in the prayer for relief.  Instead of praying for an award of prejudgment interest on the charge-off balance and seeking interest from the date of charge-off (October 20, 2005), the prayer sought interest (at an annualized rate of 24%) on the charge-off balance from an earlier date—the date of last payment (March 8, 2005).  In other words, the complaint inadvertently sought interest from the wrong date.

> Despite this inadvertent typographical error, the Collection Complaint nonetheless sought to recover substantially less from Alaan than the full amount that Asset was entitled to collect.  This is true regardless whether interest is calculated at an annualized rate of 24% (the rate actually assessed) over an incorrect period of time; at an annualized rate [of] 30.74% (the rate in effect on the date of charge-off) over the correct period of time; or at the variable 'Default Rate' (the rate that Alaan may contend applies after charge off) over the correct period of time....

> Although the Collection Complaint sought interest for approximately an extra seven and a half months (by starting the 'interest clock' on March 8, 2005 instead of October 20, 2005), because it applied an interest rate of 24%, it sought only $3,789.77 in interest during this period.

> Had Asset assessed interest at a fixed rate of 30.74% between October 20, 2005 and February 19, 2009, it would have been entitled to collect $4,094.36 in interest from Alaan....

> Had Asset assessed interest at a variable Default Rate between October 20, 2005 and February 19, 2009, defined in the Card Agreement governing Alaan's Citibank account as the sum of the U.S. Prime Rate in effect each month during that period—which began at 6.75%, rose to 8.25% and dropped to its current rate of 3.25%—plus 23.99%, it would have been entitled to collect $4,116.62 in interest from Alaan.

*Id.* ¶¶ 5-6, 8-10.

In a declaration, Plaintiff states:

> I received account statements from Citibank regarding the above Account.

> Prior to my account going into default, the interest rate on my credit card with Citibank was a very low variable rate of under 24%.

> At no time after my account with Citibank went into default was there ever a fixed interest rate....

> I never, at that time, agreed a final balance with Citibank or Asset, nor did I ever make any agreement, in writing, verbally, or implicitly, to pay a fixed interest rate or any balance of any kind to Citibank or Asset.

1

2

Neither Asset nor Citibank ever approached me and requested that we agree to an account stated, and neither Asset nor Citibank ever communicated a final balance struck with me.

3

4

The interest rate charged on my Account with Citibank was always variable interest rate, and not the fixed rate Asset contends in its state complaint.

5

6

In 2009, I received a copy of the complaint ... that Asset Acceptance [filed] against me in the Superior Court of California....  In this complaint, Asset demanded interest at a rate of 24% from the default-date through the date-of-judgment.

7

8

9

When I was served with this lawsuit, I noted that the interest rate claimed owed by me was incorrect, the interest was being charged twice over a period of time, and the interest rate was not provided for in any contract between myself and Citibank or Asset.

10

11

After reviewing the complaint in the state lawsuit it became clear to me that many of the claims in the state lawsuit were misrepresented and I therefore had no reason to believe any of the figures being used by Citibank or Asset in this matter or in the Complaint.

12

13

If I had been presented with the proper interest rate, so that the amount demanded was not inflated, and if Asset had not misrepresented certain factual issues in their complaint, I would have taken the state lawsuit more seriously and not been frustrated in my desire and efforts to resolve this matter before trial.

14

15

16

17

However, because Asset had so blatantly misrepresented the interest rate in this case, and because Asset had misrepresented the period of times I supposedly owed interest at erroneous interest rates, I was frustrated in my abilities to accurately access any potential liability I might have in that state case and was, therefore, unable to enter into fair negotiations with Asset.

18

(Alaan Decl. ¶¶ 6-8, 11-18, ECF No. 32-8).

19

### III.    Contentions of the Parties

20

Asset contends:

21

22

23

24

25

26

The motion [for summary judgment] is made on the grounds that there is no competent, admissible evidence to show that Asset engaged in any conduct in violation of federal or state law, and therefore no genuine issue of material fact for trial exists.  The undisputed evidence shows that, contrary to Alaan's assertions, Asset acquired Alaan's unpaid Citibank account pursuant to a Purchase and Sale Agreement; Asset never said it was seeking to collect 'principal' in its collection complaint against Alaan, but even if it had, this would not state a claim under the FDCPA, given the Ninth Circuit's ruling in *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010); Asset did not misrepresent its right to request attorneys' fees; and Asset prayed for interest at a rate substantially below the interest rate imposed by the original creditor, Citibank, as reflected in the monthly account statements sent to Alaan.

27

(ECF No. 30 at 2).

28

Plaintiff contends that "any interest rate that might have applied to this debt was

variable in nature....  Further, any interest rate above 7% must be provided for by contract, and Asset has not produced a contract."  (ECF No. 32 at 10 (citing, *inter alia*, Cal. Const. art. XV, § 1)).  Plaintiff contends: "Asset treats all variable interest rates as a fixed rate.  Asset argues it can choose a high variable interest rate from a Citibank statement and use that variable rate as the applicable fixed rate throughout the remaining term of the contract.  However, as this interest is not what any contract provides for, and as there is no statute that provides for such an interest rate, this violates the FDCPA and California's Rosenthal Act."  *Id*. at 11.  Plaintiff also contends that the materiality issue in *Donohue* is an "issue [that] must be decided by a jury after hearing Ms. Alaan's testimony."  *Id*. at 26.

## IV.    Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The materiality of a fact is determined by the substantive law governing the claim or defense.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

The moving party has the initial burden of demonstrating that summary judgment is proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  *See Celotex*, 477 U.S. at 322, 324.  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in her favor.  *See Anderson*, 477 U.S. at 256.  To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law.  *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th

1   Cir. 1986).  Instead, the nonmovant must designate which specific facts show that there is a

2   genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

3   **V.     Discussion**

4        "Seeking somewhat to level the playing field between debtors and debt collectors, the

5   FDCPA prohibits debt collectors from making false or misleading representations and from

6   engaging in various abusive and unfair practices."  *Donohue v. Quick Collect, Inc.*, 592 F.3d

7   1027, 1030 (9th Cir. 2010) (quotation omitted).  "The FDCPA imposes strict liability on

8   creditors, including liability for violations that are not knowing or intentional."  *McCollough*

9   *v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (quotation

10  omitted).

11        In the Second Amended Complaint, Plaintiff alleges violations of two FDCPA

12  provisions, 15 U.S.C. §§ 1692e and 1692f.  Section 1692e prohibits a debt collector from using

13  "any false, deceptive, or misleading representation or means in connection with the collection

14  of any debt."  15 U.S.C. § 1692e; *see also* 15 U.S.C. §§ 1692e(2)(A) (prohibiting "[t]he false

15  representation of ... the character, amount, or legal status of any debt"); 1692e(10) (prohibiting

16  "[t]he use of any false representation or deceptive means to collect or attempt to collect any

17  debt or to obtain information concerning a consumer").  Section 1692f prohibits a debt

18  collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

19  15 U.S.C. § 1692f; *see also* 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount

20  ... unless such amount is expressly authorized by the agreement creating the debt or permitted

21  by law").

22        "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes

23  into account whether the least sophisticated debtor would likely be misled by a

24  communication."  *Donohue*, 592 F.3d at 1030 (quotation omitted).  The "objective 'least

25  sophisticated debtor' standard ... ensures that the FDCPA protects all consumers, the gullible

26  as well as the shrewd, ... the ignorant, the unthinking, and the credulous."  *McCollough*, 637

27  F.3d at 952 (quotation omitted).  "[F]alse but non-material representations are not likely to

28  mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or

1692f." *Donohue*, 592 F.3d at 1033. "In assessing FDCPA liability, [the Court of Appeals for the Ninth Circuit is] not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 1034; *see id.* at 1033-34 (holding that a "Complaint's mislabeling $32.89 as 12% interest, when $32.89 included both interest and pre-assignment finance charges, is not materially false," finding that "the total owed was accurately stated in the Complaint, but the label for at least one of the two sums comprising the total debt was technically incorrect: $32.89, labeled 'interest ... of 12%,' included pre-assignment finance charges and interest").

The Second Amended Complaint alleges that, in connection with the state court lawsuit Asset filed against Plaintiff, Asset violated the FDCPA and the RFDCPA in the following ways:

a.  Asset misrepresented that it was lawfully entitled to collect the debt owed to Citibank, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10);

b.  Asset certified, through their agent attorneys, under CCP 128.7 et seq and CCP 128.7(3) that the allegation and other factual contentions had evidentiary support or were likely to have evidentiary support when in fact they did not in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f(1);

c.  Asset stated that the amount due consisted only of principal when it actually consisted of interest, fees and other charges, thereby misrepresenting the character, amount or legal status of the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

d.  Asset misrepresented that it was lawfully entitled to collect attorneys fees when such amount was not expressly authorized by [the] agreement creating the debt or permitted by law in violation of 15 U.S.C. §§ 1692e, and 1692f(1);

e.  Asset misrepresented that it was lawfully entitled to collect fixed interest of more than ten percent when such amount was not expressly authorized by [the] agreement creating the debt or permitted by law in violation of 15 U.S.C. §§ 1692e, and 1692f(1);

f.  Asset misrepresented that it was lawfully entitled to collect interest from March 8, 2005 on $3,991.42, when the amount of the debt at that time owed, if any, was less and closer to $3,200.00 thereby misrepresenting the amount of the debt including but not limited to the amount of interest which in addition was not expressly authorized by [the] agreement creating the debt or permitted by law all in violation of 15 U.S.C. §§ 1692e(2)(A), and 1692f(1).

ECF No. 26 ¶ 21; *see also id.* ¶ 29 (alleging that the same conduct violated the RFDCPA, Cal. Civ. Code §§ 1788.13(l) ("No debt collector shall collect or attempt to collect a consumer debt

by means of ... [a]ny communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency."); 1788.17 ("[E]very debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of ... Title 15 of the United States Code.")).

Asset moves for summary judgment as to each of the six violations alleged in the Second Amended Complaint.

**A.    Asset's Entitlement to Collect the Debt**

Plaintiff alleges that Asset violated the FDCPA and the RFDCPA because "Asset misrepresented that it was lawfully entitled to collect the debt owed to Citibank...."  ECF No. 26 ¶ 21(a); *see also id.* ¶ 29(a).

In his declaration, Proctor states that, "[o]n May 25, 2007, Asset acquired all rights to a portfolio of charged-off credit card accounts from Citibank," including a credit card account in Plaintiff's name.  (Proctor Decl. ¶ 2, ECF No. 30-2).

Plaintiff objects to the admissibility of this statement by Proctor on the grounds that "Proctor appears to have no personal knowledge of the statements he makes," and "[p]ursuant to Fed. R. Evid. 1002 ('Best Evidence Rule'), any testimony regarding the contents of this 'agreement' [between Asset and Citibank], or any document [is] inadmissible." (ECF No. 32-9 at 5).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4). "Rule 56 does not require the nonmoving party to depose her own witnesses," and the evidence offered at summary judgment need not be "in a form that would be admissible at trial." *Celotex*, 477 U.S. at 324; *cf. Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.") (citation omitted).  The best evidence rule "does not set up an order of preferred admissibility" requiring parties to prove facts through documents or

recordings whenever possible. *United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053-54 (9th Cir. 1976); *see also Atchley v. Pepperidge Farm, Inc.*, No. CV-04-452, 2008 WL 2074035, at *7 (E.D. Wash. May 14, 2008) ("stating that an agreement existed is not the same thing as describing the contents of the agreement").

In his declaration, Proctor asserts that he is Asset's "Litigation Coordinator"; he is "authorized to make this Declaration on behalf of Asset"; and he is "familiar with the facts set forth in this declaration through personal knowledge and/or a review of business records maintained by Asset." (Proctor Decl. ¶ 1, ECF No. 30-2). Proctor asserts that he has "reviewed the Agreement [between Asset and Citibank] and am familiar with its contents," and "[a]s part of the transaction, Citibank provided Asset Acceptance with information about the account, including Ms. Alaan's billing address, her phone number, her social security number, the date of her last payment, the date the account was charged-off, and the balance due on the account, which is referred to as 'Schedule A.'" *Id.* ¶ 2. Attached to Proctor's declaration is a copy of what Proctor asserts is a redacted version of "Schedule A."

After review of the record, the Court finds that the Proctor declaration adequately satisfies the requirements of Rule 56, and constitutes evidence that Asset was entitled to collect the debt Plaintiff owed to Citibank. Plaintiff does not submit evidence to counter Proctor's declaration that Asset acquired all of Citibank's rights to Plaintiff's credit card account with Citibank. Accordingly, the Motion for Summary Judgment is granted as to Plaintiff's claim that Asset violated the FDCPA and the RFDCPA because "Asset misrepresented that it was lawfully entitled to collect the debt owed to Citibank...." ECF No. 26 ¶ 21(a); *see also id.* ¶ 29(a).

**B.      Evidentiary Support for the State Court Complaint**

Plaintiff alleges that Asset violated the FDCPA and the RFDCPA because "Asset certified, through their agent attorneys, ... that the allegation and other factual contentions had evidentiary support or were likely to have evidentiary support when in fact they did not...." ECF No. 26 ¶ 21(b); *see also id.* ¶ 29(b).

Asset moves for summary judgment as to this claim, contending that "[n]either the

1  FDCPA nor the Rosenthal Act requires a debt collector to have in hand all of the evidence
2  necessary to prove its case when it files a lawsuit." (ECF No. 30-1 at 15). Plaintiff does not
3  address this contention in her opposition papers.

4  "Even when viewed from the perspective of an unsophisticated consumer, the filing of
5  a debt-collection lawsuit without the immediate means of proving the debt does not have the
6  natural consequence of harassing, abusing, or oppressing a debtor," in violation of the FDCPA.
7  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-31 (6th Cir. 2006) (citation omitted);
8  *see also id.* at 333 ("[A] debt may be properly pursued in court, even if the debt collector does
9  not yet possess adequate proof of its claim."); *Mansfield v. Midland Funding, LLC*, No.
10 09cv358-L-WVG, 2011 WL 1212939, at *5 (S.D. Cal. Mar. 30, 2011) ("[A] debt collector
11 may file a debt collection action even if the debt collector does not at the time of filing have
12 adequate proof to support the claim.").

13 After review of the submissions of the parties and the relevant legal authority, the Court
14 grants the Motion for Summary Judgment as to Plaintiff's claim that Asset violated the
15 FDCPA and the RFDCPA because "Asset certified, through their agent attorneys, ... that the
16 allegation and other factual contentions had evidentiary support or were likely to have
17 evidentiary support when in fact they did not...." ECF No. 26 ¶ 21(b); *see also id.* ¶ 29(b).

18   **C.   "Amount Due Consisted Only of Principal"**

19 Plaintiff alleges that Asset violated the FDCPA and the RFDCPA because "Asset stated
20 that the amount due consisted only of principal when it actually consisted of interest, fees and
21 other charges, thereby misrepresenting the character, amount or legal status of the debt...."
22 ECF No. 26 ¶ 21(c); *see also id.* ¶ 29(c).

23 Asset moves for summary judgment as to this claim, contending, *inter alia*, that
24 "Alaan's claim is flatly contradicted by the actual language used in the [state court] Collection
25 Complaint. That pleading does not assert that the debt consisted only of 'principal.'" (ECF
26 No. 30-1 at 17). Plaintiff does not address this contention in her opposition papers.

27 In the complaint filed by Asset against Plaintiff in state court, Asset "pray[ed] ... for
28 damages of $3,991.42," and asserted that "$3,991.42 ... is the fixed and agreed upon amount

1  remaining unpaid despite plaintiff's demand." (ECF No. 26-1 at 3-4). The word, "principal,"
2  does not appear in the state court complaint.

3       After review of the submissions of the parties, the Court grants the Motion for Summary
4  Judgment as to Plaintiff's claim that Asset violated the FDCPA and the RFDCPA because
5  "Asset stated that the amount due consisted only of principal when it actually consisted of
6  interest, fees and other charges, thereby misrepresenting the character, amount or legal status
7  of the debt...." ECF No. 26 ¶ 21(c); *see also id*. ¶ 29(c).

8       **D.    Attorney's Fees**

9       Plaintiff alleges that Asset violated the FDCPA and the RFDCPA because "Asset
10 misrepresented that it was lawfully entitled to collect attorneys fees when such amount was not
11 expressly authorized by [the] agreement creating the debt or permitted by law...." ECF No.
12 26 ¶ 21(d); *see also id*. ¶ 29(d).

13      Asset moves for summary judgment as to this claim, contending that Asset's request
14 for attorney's fees in the state court complaint "was authorized by law and does not violate the
15 FDCPA or the Rosenthal Act." (ECF No. 30-1 at 17). In opposition to Asset's motion,
16 Plaintiff asserts that "Asset never provides any contract that authorizes any ... attorney's
17 fees...." (ECF No. 32 at 27). Otherwise, Plaintiff does not address Asset's contention that its
18 prayer for attorney's fees was authorized by law and did not violate the FDCPA and the
19 RFDCPA.

20      Asset sued Plaintiff for an "open book account," and requested that the state court issue
21 an award of attorney's fees "according to proof." (ECF No. 26-1 at 4). The California Civil
22 Code provides that in certain actions that are "on a contract based upon a book account," a
23 "prevailing party" may recover its attorney's fees. Cal. Civ. Code § 1717.5(a) ("[I]n any
24 action on a contract based on a book account, ... which does not provide for attorney's fees and
25 costs, ... the party who is determined to be the party prevailing on the contract shall be entitled
26 to reasonable attorney's fees, ... in addition to other costs.").

27      After review of the submissions of the parties and the relevant legal authority, the Court
28 grants the Motion for Summary Judgment as to Plaintiff's claim that Asset violated the

1   FDCPA and the RFDCPA because "Asset misrepresented that it was lawfully entitled to

2   collect attorneys fees when such amount was not expressly authorized by [the] agreement

3   creating the debt or permitted by law...."  ECF No. 26 ¶ 21(d); *see also id.* ¶ 29(d).

### E.   Interest-Related Claims

5       Plaintiff alleges that Asset violated the FDCPA and the RFDCPA because "Asset

6   misrepresented that it was lawfully entitled to collect fixed interest of more than ten percent

7   when such amount was not expressly authorized by [the] agreement creating the debt or

8   permitted by law," and "Asset misrepresented that it was lawfully entitled to collect interest

9   from March 8, 2005 on $3,991.42, when the amount of the debt at that time owed, if any, was

10  less and closer to $3,200.00 thereby misrepresenting the amount of the debt including but not

11  limited to the amount of interest which in addition was not expressly authorized by [the]

12  agreement creating the debt or permitted by law."  ECF No. 26 ¶ 21(e)-(f); *see also id.* ¶ 29(e)

13  (collectively, "interest-related claims").

14      Asset moves for summary judgment as to Plaintiff's interest-related claims on the basis

15  that "regardless of the interest rate that applied to the account after it was charged off and sold

16  to Asset—either a fixed rate of 30.74% [under an 'account stated' theory] or a variable rate of

17  23.99% plus the U.S. Prime Rate [pursuant to the contract between Citibank and

18  Plaintiff]—the prayer for the lower 24% rate, even for a few extra months—was not

19  'materially misleading' under *Donohue*."  (ECF No. 30-1 at 28).

### 1.   Account Stated Theory

21      "An account stated is an agreement, based on prior transactions between the parties, that

22  the items of an account are true and that the balance struck is due and owing.  To be an account

23  stated, it must appear that at the time of the statement an indebtedness from one party to the

24  other existed, that a balance was then struck and agreed to be the correct sum owing from the

25  debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor

26  the amount thus determined to be owing."  *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752-53

27  (1987) (quotation omitted).  In order to constitute an account stated, there must be an "element

28  of finality" to the statement, which is missing when the parties continue transacting business

and "statements [a]re sent periodically." *Am. Fruit Growers, Inc. v. Jackson*, 203 Cal. 748, 751-52 (1928) ("[I]t is clear that a statement rendered cannot be said to be an account stated unless it is intended to be such and expressly or impliedly is assented to as such by the party to whom it is rendered.  There is in the case before us no element of finality, as the parties were still transacting business.  These statements were sent periodically and business was continued between them as before.  There is no ground whatever for the contention that the account was rendered and intended to be an account stated, or that [the charged party], either expressly or impliedly, considered that it was such.").  Whether an alleged debt is an account stated is a question of fact.  *See Fogarty v. McGuire*, 170 Cal. App. 2d 405, 409 (1959) ( "The action upon an account stated is not upon the original dealings and transactions of the parties.  It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement....  [I]f in writing, it should appear to be something more than a mere memorandum and should show with clearness and certainty that it was intended to be a final settlement up to date.  Whether these conditions exist is usually a question to be determined by the trier of fact from all the circumstances of the case, and in reaching that determination reasonable inferences can be drawn in support of the claim of either party if there is any credible evidence warranting such action.") (citations omitted).

Asset contends: "Alaan admitted [at her deposition] that she received monthly statements from Citibank—including the charge-off statement with an interest rate of 30.74%—[and] never disputed any of those monthly statements, knew interest would be imposed if she did not pay the full amount due on her account each month, and conceded that the account statements issued between January 22, 2004 and October 20, 2005 were accurate. This is sufficient to establish an account stated with an applicable interest rate of 30.74%." (ECF No. 30-1 at 25-26).  In support of its contention, Asset attaches selected pages from Plaintiff's deposition, and a copy of the October 20, 2005 Citibank statement.  (ECF Nos. 30-2 at 13; 30-3 at 5-18).  Plaintiff testified that she "received a statement every month from Citi Bank on the Citi Card account."  (Alaan Dep. at 24, ECF No. 30-3).  Plaintiff was asked about "statements of account from Citi, starting with a closing date of January 22, 2004 through

1   October 20, 2005, and monthly statements with closing dates for each month between those

2   dates." *Id*. at 36.  Plaintiff testified that she did not "dispute any charges on [her] credit card

3   account" and she understood that "Citi Bank would charge [her] interest on [her] account when

4   it wasn't paid off in full each month." *Id*. at 30, 52.

5        In opposition to the Motion for Summary Judgment, Plaintiff states in a declaration that

6   she "never, at that time, agreed [to] a final balance with Citibank or Asset, nor did [she] ever

7   make any agreement, in writing, verbally, or implicitly, to pay a fixed interest rate or any

8   balance of any kind to Citibank or Asset." (Alaan Decl. ¶ 11, ECF No. 32-8).  Plaintiff states:

9   "Neither Asset nor Citibank ever approached me and requested that we agree to an account

10  stated, and neither Asset nor Citibank ever communicated a final balance struck with me." *Id*.

11  ¶ 12.

12       A trier of fact reasonably could find that the October 20, 2005 statement does not

13  clearly inform the "least sophisticated debtor," *McCollough*, 637 F.3d at 952, that it was

14  intended to be a final statement which constitutes a "new contract by and under which the

15  parties have adjusted their differences and reached an agreement," *Fogarty*, 170 Cal. App. 2d

16  at 409.  *See* ECF No. 30-2 at 13 (October 20, 2005 statement).  There is little to distinguish the

17  October 20, 2005 statement from the March 22, 2005 statement, which is the only other

18  monthly statement submitted by Asset.  *Compare* ECF No. 30-2 at 10-11 *with* ECF No. 30-2

19  at 13.  Plaintiff disputes that "Citibank ever approached [her] and requested that we agree to

20  an account stated," and that "Asset [or] Citibank ever communicated a final balance struck

21  with [her]," and that she ever agreed to an account stated.  After review of the evidence

22  submitted, the Court finds that there is a genuine issue of material fact as to whether an account

23  stated establishing a fixed interest rate at 30.74% was created between Plaintiff and Citibank

24  based upon the October 20, 2005 credit card statement.  *Cf. Am. Fruit Growers*, 203 Cal. at

25  751-52.  Accordingly, the Court finds that Asset is not entitled to summary judgment on

26  Plaintiff's interest-related claims under the theory that Asset did not materially mislead

27  Plaintiff by seeking a fixed rate of interest of 24% because Asset was entitled to charge

28  Plaintiff a fixed rate of interest of 30.74% pursuant to an account stated.

## 2.    Contractual Interest Rate

Asset contends that, "[a]s defined in the Card Agreement that Alaan admitted at her deposition governed her account ..., the 'Default Rate' was calculated by adding 23.99% to the 'U.S. Prime Rate' published in the Wall Street Journal." (ECF No. 30-1 at 11 n.2).  However, Asset has failed to submit competent evidence to establish the interest rate stated in the contract between Citibank and Plaintiff.  Asset does not submit a copy of the contract, and the contractual rate of interest is not set forth in the portions of Plaintiff's deposition filed with the Court.  *See* ECF No. 30-3 at 5-18.  In his declaration, Proctor references the "variable Default Rate ... defined in the Card Agreement governing Alaan's Citibank account," but he does not establish the basis for his personal knowledge of the terms of the contract between Citibank and Plaintiff.  *Cf*. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Proctor, an employee of Asset, does not state that Citibank provided the contract to Asset during the course of their business dealings, or otherwise state that he has seen the contract.  Proctor attaches to his declaration the March 22, 2005 and October 20, 2005 Citibank statements for Plaintiff's account, but neither statement explains the method by which the variable interest rate is calculated.

In the absence of competent evidence of the contractual interest rate between Citibank and Plaintiff, and in light of Plaintiff's evidence, *see* Alaan Decl. ¶¶ 7-8, 13-18, ECF No. 32-8, the Court cannot find as a matter of law that applying a *fixed* interest rate of 24%, as opposed to the different (and possibly lower), *variable* interest rate agreed upon between Citibank and Plaintiff, was a "non-material" misrepresentation.[1]  *Donohue*, 592 F.3d at 1033 ("[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and

---

[1]  The parties dispute the issue of who bears the burden of proving materiality under *Donohue* and whether that burden includes a showing that the consumer would have acted differently but for the misstatement.  The Court does not decide these issues, because based upon the evidentiary record, the Motion for Summary Judgment must be denied as to Plaintiff's interest-related claims regardless of which party is correct as to the issue of the burden of proof under *Donohue*.

1   therefore are not actionable under §§ 1692e or 1692f."); *cf. id.* at 1034 ("'[A]pplying an

2   incorrect *rate* of interest would lead to a real injury'....") (quoting *Hahn*, 557 F.3d at 757).

3       Accordingly, the Court denies the Motion for Summary Judgment as to Plaintiff's

4   interest-related claims.  *See* ECF No. 26 ¶ 21(e)-(f); *see also id.* ¶ 29(e).

5       **F.     Evidentiary Objections**

6       Any objections to evidence relied upon in this Order are overruled.  Any objections to

7   evidence not cited or relied upon in this Order are denied as moot.

8   **VI.   Conclusion**

9       IT IS HEREBY ORDERED that the Motion for Summary Judgment is GRANTED in

10  part and DENIED in part, as discussed in this Order.  (ECF No. 30).

11

12  DATED:  August 8, 2011

13                          **WILLIAM Q. HAYES**
                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28